IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

```
ROBERT WAYNE CHALFANT,          )
                                )    Civil No. 4:03-cv-30569
            Plaintiff,          )
                                )
vs.                             )    RULING ON DEFENDANTS'
                                )    MOTION FOR SUMMARY JUDGMENT
TITAN DISTRIBUTION, INC. and    )
TITAN INTERNATIONAL, INC.,      )
                                )
            Defendants.         )
```

Before the Court is defendants' motion for summary
judgment [13], filed January 27, 2005.[1] This is an action under the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12100, et seq.,
the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621,
et seq., and the parallel causes of action provided by the Iowa
Civil Rights Act (ICRA), Iowa Code ch. 216, et seq. Plaintiff
originally filed this lawsuit in the Iowa District Court in and for
Polk County. Defendants removed this case to federal court pursuant
to 28 U.S.C. § 1441 on October 15, 2003. The parties consented to
proceed before a United States Magistrate Judge and the case was
referred to the undersigned for all further proceedings on February
18, 2004. See 28 U.S.C. § 636(c). Chalfant claims Titan violated
both federal and state law when it refused to hire him based on his
perceived disability and his age after Titan acquired the business
for which Chalfant worked, Quintak, Inc.

---

[1] Plaintiff also filed a motion to supplement his resistance
[25]. The motion is granted.

# I.

## SUMMARY JUDGMENT

Defendants are entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Erenberg v. Methodist Hospital, 357 F.3d 787, 791 (8th Cir. 2004)(quoting Fed. R. Civ. P. 56(c)). The Court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them, "that is, those inferences which may be drawn without resorting to speculation." Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 885-86 (8th Cir. 2001)(citing Sprenger v. Federal Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001)); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Erenberg, 357 F.3d at 791; Tademe v. St. Cloud State University, 328 F.3d 982, 987 (8th Cir. 2003); Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999); Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir. 1993). An issue of material fact is genuine if it has a real basis in the record. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita, 475 U.S. at 586-87 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." Hartnagel, 953 F. 2d at 395 (quoting Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 248 (1986)); <u>see</u> <u>Hitt v. Harsco Corp.</u>, 356 F.3d 920, 923 (8th Cir. 2004); <u>Rouse v. Benson</u>, 193 F.3d 936, 939 (8th Cir. 1999).

It is the non-moving party's obligation to "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." <u>Rouse</u>, 193 F.3d at 939; <u>see</u> <u>Hitt</u>, 356 F.3d at 923. In assessing a motion for summary judgment a court must determine whether a fair-minded trier of fact could reasonably find for the nonmoving party based on the evidence presented. <u>Anderson</u>, 477 U.S. at 248; <u>Herring v. Canada Life Assurance Co.</u>, 207 F.3d 1026, 1030 (8th Cir. 2000).

## II.

### FACTUAL BACKGROUND

Defendant Titan Distribution, Inc., is a division of defendant Titan International, Inc. (hereinafter "Titan"). Bill Campbell testified he is president of "Titan Tire." He had responsibilities for Titan Distribution. (Pl. App. at 2). Phil Stanhope at Titan was responsible for the interface with Quintak's operations. (<u>Id.</u> at 2-3). Their offices were in the Titan Tire plant on Market Street in Des Moines, Iowa. (<u>Id.</u> at 11).

Quintak, Inc. was a separate entity from Titan and performed the mounting and distribution of wheeled tire assemblies for Titan. (Pl. App. at 2). Quintak had formerly been known as

3

DICO. (<u>Id.</u> at 12). Quintak had two facilities, Quintak East Market and Quintak West, and employed approximately 52 employees. (<u>Id.</u> at 11). Martin (Craig) Warren managed Quintak East Market; Jerry Williams supervised its wheeled tire mounting operation. (<u>Id.</u>) Warren and Williams took "some direction" from Campbell and Stanhope on a day-to-day basis. (<u>Id.</u> at 10). Also working at Quintak were laborers hired from Action Warehouse, who received daily instruction from Warren and/or his supervisor but who were otherwise administered by an employee of Action, Brice Heberlin. (<u>Id.</u> at 11).

Plaintiff Robert Chalfant was employed as a second shift supervisor of the wheeled tire mounting operation and shipping dock at Quintak East Market. (Pl. App. at 119). His supervisor was Jerry Williams. (<u>Id.</u> at 11). Chalfant had previously been employed by DICO and came to the East Market location in 1997 when it became Quintak. (<u>Id.</u> at 12). At the time of the events in question in this case Chalfant was 56-1/2 years old. As part of his supervisory job, he would load trucks with a forklift. (<u>Id.</u> at 119). Mr. Chalfant had a medical history which included a heart attack in 1992, carpal tunnel surgery and heart by-pass surgery in 1997, and arthritis in his back, neck, ankle and hands. (<u>Id.</u>)

In July 2002 Stanhope left Titan and Campbell was assigned his Quintak responsibilities. (Pl. App. at 11). Titan decided to close down Quintak West and to bring a brake and

actuator business in Ventura, Iowa, to the East Market location.
(Id.) The plan was to cut costs, close various distribution centers
and to reduce the size of Titan's operations. (Id. at 2).

Quintak was dissolved and Titan took over its operations
on July 31, 2002 at midnight. In deciding who to retain when Titan
took over Quintak, Campbell designated a certain number of job
slots to fill. (Def. App. at 3). As part of that process, all
Quintak employees who wanted to work for Titan had to submit
applications and undergo a qualifying physical. Two individuals
from Titan were responsible for taking the applications and setting
up the physicals: Nadis Barucic and Cheryl Luthin. (Pl. App. at
14).

Chalfant filled out an application for the job he had
held at Quintak, second shift supervisor, which he understood had
the same job duties. (Pl. App. at 120). Included in the application
paper work was a form "Voluntary Applicant Identification Survey"
which notified the applicant "To comply with Equal
Opportunity/Affirmative Action, Titan would appreciate responses to
the following questions. This information is used for informational
purposes only and will not become part of your formal applicant
record. However, we do encourage you to complete the survey." (Id.
at 62). Chalfant completed the form, placing himself in age range
"40-64" and checked "yes" to signify he was "physically
handicapped." (Id.) He said he was physically handicapped not

because of any particular impairment, but he thought it was appropriate because of his various ailments. (Id. at 122).

Chalfant interviewed with Barucic, who asked Chalfant what his job was and what he did. Chalfant told Barucic he supervised the loading of trucks with a forklift and also did some forklift work himself. Barucic asked Chalfant if he missed work and Chalfant said two or three days if he was sick. Barucic asked "you get sick?" and Chalfant told him yes, but only a couple of days.

Chalfant was later given a physical examination by the company doctor, Dr. Sciorrota, who told him nothing about the results, but gave him a slip of paper stating he could return to work in his present capacity. (Pl. App. at 52, 120-21, 122). The record of the examination noted Chalfant's health history. (Id. at 53-54). The exam record was provided to Barucic who in turn sent it with Chalfant's application to Luthin at Titan's Quincy, Illinois office. (Id. at 13).

Chalfant returned to work. He says that in a discussion with Williams he was told by Williams that Williams had seen a list of the people to be retained by Titan and Chalfant was on it. (Pl. App. at 121). He continued to work from August 1, 2002 to August 8, 2002. How the decision was made that Chalfant would not continue at Titan and who made it are unclear and disputed. After he clocked in on August 8, Williams and Warren called Chalfant aside and told him he had not passed the physical. Chalfant protested and asked to be

allowed to work until he checked out what the problem was. He was told he should contact Cheryl Luthin. He attempted to call her from Warren's office but could not reach her. Chalfant then left the plant for home (Id.)

Handwritten notes on Chalfant's application state "PX OK for fork lift driving" then beneath that "08/01/02 10:45 am Not pass px." (Id. at 56). Barucic agrees he wrote both notes on Chalfant's application but claims he did not make any determination that Chalfant had failed the preemployment physical. (Id. at 23-25). Barucic faxed the physical exam report to Cheryl Luthin in Quincy, Illinois. (Id. at 25). Barucic testified he did not have the authority to decide who would be hired. (Id. at 26).

Luthin testified she did not receive the applications until after Titan had filled all the positions. (Pl. App. at 31). Luthin said she did not participate in the hiring decisions. (Id.)

Campbell does not recall seeing the applications and gave the department managers, Warren and Williams, authority to decide who would be hired by Titan. (Pl. App. at 3, 7,). Campbell does not know why Chalfant was not hired. (Id. at 8). Warren wanted to keep Chalfant but testified he was not asked about hiring him, only that he was contacted by Barucic or Luthin and told Chalfant was not supposed to continue working. (Id. at 16). Warren testified Barucic and Luthin had the power to decide who to hire. (Id. at 17). Williams remembers talking to Chalfant on his last day about the

fact Chalfant was not going to be hired but does not recall how he learned this information. (<u>Id.</u> at 38).

The Medical Examination Report from Dr. Sciorrotta, who performed the physical, stated "The Examinee is medically able to do the essential functions of the job with accommodations listed below," which included "Rec Hearing Protection -- OK to work at current capacity - fork lift driving." (<u>Id.</u> at 52). The doctor's notes on physical examination stated "Rec Hearing Protection. Rec. pt. return to current situation (Forklift driving). If pt. is expected to perform heavy lifting, I'd rec FCE and would need documentation from Treating Drs." (<u>Id.</u> at 53).

Quintak had no minimum physical lifting requirements. Campbell has no idea whether in August 2002 Titan had minimum lifting requirements for its employees. (Pl. App. at 9). Barucic testified he was not aware of any minimum lifting requirement for supervisory personnel at Titan. (<u>Id.</u> at 26). Jerry Williams has not seen a minimum lifting requirement while he has been at Titan. (<u>Id.</u> at 39).

After Chalfant left, his position was filled by Jerry Palmer, a 45-year-old individual. (Pl. App. at 75). Palmer had been the second shift supervisor on the tire side of the warehouse. (<u>Id.</u> at 16). Warren testified he and Williams decided Palmer would cover both the tire side and the wheeled tire mounting/distribution sides. (<u>Id.</u> at 16, 18). Jerry Williams testified he had no input in

placing Jerry Palmer in the position of second shift supervisor of the mounting side. Palmer did the second shift supervisor job for between thirty to sixty days after which Titan eliminated the second shift wheeled tire mounting/distribution facility. Action Warehouse jobs were eliminated at the same time. (Id.) Palmer returned to supervising the second shift on the tire side of the operation. (Id. at 19).

Chalfant filed a complaint with the Iowa Civil Rights Commission and with the Equal Employment Opportunity Commissions. (Pl. App. at 63-64). In response to the complaint to the Iowa Civil Rights Commission, Titan responded that Chalfant "was not hired because he failed the pre-employment physical." (Id.) This lawsuit followed.

### III.

### DISCUSSION

A.   ADA[2]

As the Court sees it, this case should be analyzed as a failure to hire claim. When Titan took over Quintak's operations Chalfant worked for Titan for a brief period, but only until Titan decided whether it would retain him. Chalfant was required to apply for a job with Titan and was not hired. Titan argues this case

---

[2] Chalfant's disability discrimination claims are brought under the ADA and ICRA. Iowa courts analyze ICRA disability discrimination claims under the same analytical framework as the federal courts under the ADA. Casey's General Stores, Inc. v. Blackford, 661 N.W.2d 515, 519 (Iowa 2003).

should be looked at as a reduction in force discharge case referring to the eventual elimination of the second shift, but that reduction in force occurred after the individual hiring decision was made with respect to Chalfant and Chalfant was replaced, if only for a brief period.

There is no direct evidence of disability discrimination in this case, accordingly, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. Chalfant must first establish a *prima facie* case by demonstrating (1) that he has an ADA-qualifying disability; (2) that he was qualified to perform the essential functions of his job with or without reasonable accommodation; (3) that he suffered an adverse employment action because of his disability. Kratzer v. Rockwell Collins, 398 F.3d 1040, 1044 (8th Cir. 2005); Casey's, 661 N.W.2d at 519.

Titan's motion challenges plaintiff's ability to prove the first element of the *prima facie* case, the existence of an ADA-qualifying disability. The ADA defines a disability as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1050 (8th Cir. 2005). In recent years the U.S. Supreme Court has indicated that "these terms need to be

interpreted strictly to create a demanding standard for qualifying as disabled . . . ." <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 195 (2002). "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." <u>Id.</u> at 198.

The relevant major life activity in this case is "working"[3] and Chalfant argues both an actual disability and regarded-as or perceived disability.[4] "Working" is substantially limited if the individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." <u>Epps v. City of Pine Lawn</u>, 353 F.3d 588, 592 (8th Cir. 2003)(quoting 45 C.F.R. § 1630.2(j)(3)(i)).

1. <u>Actual Disability</u>

At the time he applied for a job with Titan Chalfant had a medical history of two heart attacks, cervical and lumbar fusion

---

[3] In his brief Chalfant argues he is also substantially limited in the major life activities of walking and standing, but no evidence is identified which would support such a finding.
Titan does not contest whether "working" is a major life activity. <u>See</u> <u>Knutson</u>, 394 F.3d at 1050-51.

[4] While Chalfant argues in his brief that he had an actual disability, the Court notes that in his removed petition he alleges only perceived disability and a record of being disabled. The Court will take it that actual disability is in the case by implied consent. Fed. R. Civ. P. 15(b).

surgeries, surgery on an ankle, as well as multiple carpal tunnel surgeries and arthritis in his hands and ankle. (Pl. App. at 53, 54, 105). There is some evidence that these medical conditions resulted in a degree of physical impairment. In his Titan application papers Chalfant said he was "physically handicapped." Chalfant's cardiologist advised him in 1992 to quit his second full-time job running his own auto shop, and to do the work only as a hobby. (Id. at 120). After his second heart attack in 1997 Craig Warren, with Williams present, told Chalfant he would not have to do hard work anymore mounting tires, and Warren would get him a forklift job or a job doing computer work. (Id.) Dr. Sciorrotta's report indicated that if heavy lifting was involved in the job for which Chalfant was applying, he would recommend a full capacity exam and more information from Chalfant's treating physicians, otherwise, Chalfant was "ok to work at current capacity." (Id. at 52-53).

Chalfant testified in his deposition that he did not have any impairments that substantially limited any of his life activities (Def. App. at 13; Pl. App. at 62), and he evidently had performed the second shift supervisor's job without difficulty.

> [A]n individual cannot prove disability status by "merely submit[ting] evidence of a medical diagnosis of an impairment."(citation omitted). Instead, the ADA requires individuals seeking [its] protection "to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience is . . . substantial."

<u>Ristrom v. Asbestos Workers Loc. 34</u>, 370 F.3d 763, 769 (8th Cir. 2004)(quoting <u>Williams</u>, 534 U.S. at 198 and <u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 567 (1999)).

Chalfant claims the combination of his physical disorders has limited his ability to do heavy lifting. A vocational rehabilitation counselor has opined, assuming Chalfant is "limited to jobs with medium and below-strength demands," that 80% of the unskilled lower-paying job market remains within his functional capacity and there is no reason he cannot perform work like he did as a shift supervisor. (Pl. App. at 89, 124).

The Eighth Circuit has held that lifting is a major life activity, <u>Helfter v. United Parcel Services, Inc.</u>, 115 F.3d 613, 616 (8th Cir. 1997)(citing 29 C.F.R. § 1630.2(i)), but a "general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA." <u>Brunko v. Mercy Hosp.</u>, 260 F.3d 939, 941 (8th Cir. 2001)(40-pound lifting restriction did not constitute disability); <u>see Conant v. City of Hibbing</u>, 271 F.3d 782, 785 (8th Cir. 2001)(30-pound lifting restriction); <u>Mellon v. Fed. Express Corp.</u>, 239 F.3d 954, 957 (8th Cir. 2001)(lifting restriction is not a disability); <u>Gutridge v. Clure</u>, 153 F.3d 898, 901 (8th Cir. 1998)(45-pound lifting restriction did not limit life activity of lifting); <u>Snow v. Ridgeview Medical Center</u>, 128 F.3d 1201, 1207 (8th Cir. 1997)(25-pound lifting restriction did not limit life activity of lifting). Chalfant does not have a definite

lifting restriction and much of the relevant job market is within his capabilities. The record is plainly insufficient to demonstrate that Chalfant's physical impairments significantly restrict him in performing a class of jobs, or broad range of jobs in various classes.

      2.   <u>Regarded as Having a Disability</u>

      "The 'regarded as' portion of the ADA disability definition was 'intended to combat the effects of archaic attitudes, erroneous perceptions, and myth that work to the disadvantage of persons with or regarded as having disabilities." <u>Knutson</u>, 394 F.3d at 1050 (quoting <u>Wooten v. Farmland Foods</u>, 58 F.3d 382, 385 (8th Cir. 1995)). "To be regarded as disabled . . . [plaintiff] would have to show [the employer] mistakenly believed that [plaintiff] had a physical impairment that substantially limited one or more major life activities, or . . . mistakenly believed that [plaintiff] had an actual, nonlimiting impairment which substantially limited one or more major life activities." <u>Brunko</u>, 260 F.3d at 942 (citing <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 489 (1999)). "When the major life activity considered to be substantially limited is working, the ADA requires at minimum that the employee is perceived as unable to work in a broad class of jobs." <u>Ollie v. Titan Tire Corp.</u>, 336 F.3d 680, 685 (8th Cir. 2003).

It is often difficult to make a case for "regarded as" disability when an applicant applies for a specific job. In such cases the employer is apt to focus on the applicant's ability to do the job in question and does not think globally about the applicant's limitations in relation to classes of jobs in the broader "world of work." Occasionally, though, the fact finder may reasonably infer a broader perceived disability from the employer's actions. Once the perception can reasonably be seen as extending well beyond the job in question, the employer is at risk on a regarded-as disability claim. See Ollie, 336 F.3d at 687. This is such a case.

Despite their denials the jury could reasonably infer that the decision not to hire Chalfant was effectively made for Titan by Barucic and/or Luthin. The jury could further find as follows. The shift supervisor position in question, though it required the ability to operate a fork lift, was not strenuous and there was no minimum lifting requirement. Barucic and Luthin would have known this. Chalfant had passed his physical and had been found capable of performing the job with the minimal accommodation of hearing protection. Chalfant, however, had a health history resulting in impairments which made him physically handicapped as he had said in his application papers. He had missed work due to sickness. Not all Quintak employees were to be retained. That Chalfant had not passed the physical exam was a pretext to

eliminate him from consideration because he was in a general sense "handicapped." The evidence that Chalfant was told he had not passed the physical examination is direct evidence that Chalfant was not hired because of his perceived impairments.

To be sure the record does not compel these conclusions, but if the jury reaches them with respect to an application for a position without substantial physical requirements, it might further conclude Titan mistakenly believed or assumed Chalfant had physical impairments which would have disqualified him from performing a wide range of manufacturing jobs like those at Titan's plant. So viewed, the hiring decision was arguably the product of attitudes and erroneous perceptions the regarded-as definition was intended to combat.

The motion for summary judgment will be denied with respect to the regarded-as disability claim.

B.   <u>ADEA</u>[5]

    The <u>McDonnell Douglas</u> burden-shifting analysis has been applied in ADEA cases and in the absence of direct evidence of age discrimination is appropriate here. <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142 (2000)(assuming without deciding that <u>McDonnell Douglas</u> framework applied); <u>Widoe v. District No. 111 Otoe County School</u>, 147 F.3d 726, 732 (8th Cir. 1998); <u>Reynolds v. Land O'Lakes, Inc.</u>, 112 F.3d 358, 361 (8th Cir. 1997)(pretext case).

    In a failure-to-hire case the *prima facie* case is met by proof that plaintiff (1) is over the age of forty; (2) was qualified for the job; (3) was not hired; and (4) someone sufficiently younger than plaintiff was hired for the job to raise an inference of age discrimination. <u>Schiltz v. Burlington Northern RR Co.</u>, 115 F.3d 1407, 1412 (8th Cir. 1997).

---

    [5] As with disability discrimination ICRA age discrimination cases are in general analyzed under the same framework as the ADEA. <u>Fisher v. Pharmacia & Upjohn</u>, 225 F.3d 915, 919 n.2 (8th Cir. 2000); <u>Bialas v. Greyhound</u>, 59 F.3d 759, 762-63 (8th Cir. 1995); <u>Landals v. George A. Rolfes Co.</u>, 454 N.W.2d 891, 893-94 (Iowa 1990).

    There is a substantive difference between Iowa and federal law on the subject of age discrimination. Iowa's age discrimination law is "age-neutral" in that it "prohibits discrimination in employment 'because of age'" with certain exceptions not relevant in this case. <u>Kunzman v. Enron Corp.</u>, 902 F. Supp. 882, 902 (N.D. Ia. 1995); <u>compare</u> Iowa § 216.6(a) <u>with</u> 29 U.S.C. § 623(a)(1), 631(a). The first element of an ADEA prima facie case is thus not required by ICRA, but this difference is not important here as Chalfant was over 40.

Once a plaintiff has presented a *prima facie* case, it is incumbent on the employer to rebut the resulting presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for its decision. <u>Mayer v. Nextel West Corp.</u>, 318 F.3d 803, 807 (8th Cir.), <u>cert. denied</u>, 540 U.S. 823 (2003); <u>Tatom v. Georgia-Pacific Corp.</u>, 228 F.3d 926, 931 (8th Cir. 2000). The burden then shifts back to the plaintiff to demonstrate that the reason given was not the real reason, but a pretext for age discrimination. <u>Mayer</u>, 318 F.3d at 807. It is not enough though to merely disbelieve the employer's proffered reasons for discharge, the evidence overall must create a reasonable inference that the proffered reason was a pretext for age discrimination. <u>Kohrt v. MidAmerican Energy Co.</u>, 364 F.3d 894, 898 (8th Cir. 2004)(quoting <u>Spencer v. Stuart Hall Co.</u>, 173 F.3d 1124, 1128 (8th Cir. 1999)).

Characterizing this case as a reduction-in-force discharge case Titan questions the sufficiency of the evidence on the last element of the *prima facie* case. In the reduction-in-force context the last element requires production of "some additional evidence to demonstrate age was a factor in [the] termination." <u>Kesler v. BASF Corp.</u>, 240 F. Supp. 2d 956, 961 (S.D. Ia. 2002); <u>see Stidham v. Minnesota Mining and Mfg., Inc.</u>, 399 F.3d 935, 938 (8th Cir. 2005). As indicated previously, for summary judgment purposes the Court does not believe this case should be analyzed as a reduction-in-force case. A decision was made not to hire Chalfant

for reasons specific to him. Titan told the Iowa Civil Rights
Commission Chalfant was not hired because he had failed to pass his
pre-employment physical. Indeed Titan's letter to the Iowa Civil
Rights Commission asserted that "Titan did not terminate" Chalfant
and implied that had Chalfant passed the physical he would have
been employed by Titan. (Pl. App. at 63). The second shift
supervisor position was not eliminated until a little over a month
after Chalfant was rejected. In the meantime he was replaced in the
position by the younger Mr. Palmer.

Viewed as a regular failure-to-hire case (and putting
aside for the moment the evidence of disability discrimination),
Chalfant has identified sufficient evidence to make a *prima facie*
case of age discrimination.

Though the summary judgment analysis applicable to
reduction-in-force cases does not apply, the claim of a reduction-
in-force nonetheless is a legitimate non-discriminatory reason for
the employment decision sufficient to shift the burden back to
Chalfant to demonstrate reduction in force was not the real reason,
but a pretext for age discrimination. Chalfant only needs to point
to Titan's statements to the Iowa Civil Rights Commission as
evidence reduction in force was not the real reason. The difficulty
is the connection to Chalfant's age. It is important to remember
that "the focus of inquiry at the summary judgment stage 'always
remains on the ultimate question of law: whether the evidence is

sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of [the plaintiff's age].'" <u>Strate v. Midwest Bankcentre, Inc.</u>, 398 F.3d 1011, 1018 (8th Cir. 2005)(quoting <u>Rothmeier v. Investment Advisers, Inc.</u>, 85 F.3d 1328, 1337 (8th Cir. 1996))(bracketed portion original to <u>Rothmeier</u>).

With this in mind the Court concludes Chalfant has not generated a genuine issue of material fact concerning the ultimate question of age discrimination. There is evidence of pretext, but pretext for disability not age discrimination. There is no significant evidence of age discrimination beyond Chalfant's age and that of his replacement for a month or so, Palmer. Chalfant argues only the situations of two other Quintak employees, Robert Buss and Vernon Christensen.[6] Buss, age 63 at the time, was allegedly replaced by Williams who was ten years younger. Christensen's job was allegedly given to a 25-year-old employee.[7] The mere fact that younger workers were hired to do the job that

---

[6] Christensen also has an age and disability discrimination action pending in this Court. Buss has an age discrimination and retaliation action pending in this Court.

[7] That Christensen's job was given to a 25-year-old is not supported in the summary judgment record. While relevant material in another case may be considered, our Local Rules require that "those parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits" on which a party relies in resisting a motion for summary judgment must be set out in an appendix. LR 56.1(b). The record in Christensen's case does contain a reference to a 25-year-old being given the job formerly held by Christensen.

two other employees had performed does not raise an inference that age was a factor in Chalfant's case. The only workforce age evidence is in Warren's affidavit in which he states twenty-three full-time employees were hired by Titan to replace the fifty Quintak employees, thirteen of whom were over age forty. (Def. App. at 16).

This then is a case in which the evidence of pretext is probative of a reason for the employment decision other than age, Chalfant's perceived disability. As a consequence, the elements of the *prima facie* case coupled with rejection of Titan's proffered reason for the hiring decision do not suffice to demonstrate intentional age discrimination as they might otherwise. <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993). Titan is entitled to summary judgment on the age discrimination claims.

**IV.**

**RULING AND ORDER**

Defendant's motion for summary judgment is **granted in part and denied in part**. The motion is denied with respect to the ADA and ICRA disability discrimination claims and is granted with respect to the age discrimination claims.

IT IS SO ORDERED.

Dated this 24th day of May, 2005.

ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE